**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 00-313-01 |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL NO. 05-CV-1516 |
| vs. | : | |
| | : | |
| JERMAINE KING, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                              **September 23, 2008**

Presently before this Court is Defendant's Post-Hearing
Motion to Vacate (Doc. No. 506), his Supplemental Post-Hearing
Memorandum (Doc. No. 605) and Second Supplemental Post-Hearing
Memorandum (Doc. No. 607), the Government's Response thereto
(Doc. No. 492), the Government's Final Response thereto (Doc. No.
515), and Defendant's Answer to the Government's Final Response
(Doc. No. 521).  Defendant moves to vacate, set aside, or correct
the sentence imposed by this Court on August 2, 2001 pursuant to
28 U.S.C. § 2255.  For the reasons below, the Court DENIES
Defendant's Motion.

**BACKGROUND**

Evidence presented at trial established that Jermaine King
took over a drug conspiracy operating in North Philadelphia in
1999, when the conspiracy's originator and leader, Anthony Davis,

was murdered in early August of that year.  The cocaine obtained
by Mr. Davis and subsequently by Mr. King was distributed at
three main locations: the 2900 block of Bonsall Street (which
encompassed the corners of Bonsall and Indiana and 23rd and
Indiana), the area of 22nd and Huntingdon Streets, and the corner
of Bonsall and Somerset/Lehigh Streets.

Numerous cooperating defendants testified to Mr. King's
ultimate role as the leader of the conspiracy.  Information
documenting Mr. King's use of certain residence telephones,
cellular telephones, and pagers to communicate with his co-
conspirators buttressed this testimony.

Witnesses testified that, by mid-1999, Mr. King had come to
control the distribution activities around 2900 Bonsall.  This
testimony included eye-witness accounts of Mr. King retrieving
bundles of crack cocaine from his mother's house, making the
decision to change the packaging of the crack from glass vials to
bags, and attending meetings with co-conspirators.  Mr. King's
involvement in the drug conspiracy resulted in the distribution
and sale of 1.5 or more kilograms of crack cocaine into his
community.

On May 31, 2000, a grand jury returned a 57-count indictment
against Mr. King and 13 others.  Mr. King was named the lead
defendant and was charged with conspiracy to distribute cocaine
base in violation of 21 U.S.C. § 846 (Count 1).  He was further

charged with distribution of or possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 6, 8, and 10).  He was further charged with distribution or possession with the intent to distribute cocaine base within 1,000 feet of a school in violation of 21 U.S.C. § 860 (Counts 7, 9, and 11).  Finally, he was charged with use of a communication facility in furtherance of a drug offense in violation of 21 U.S.C. § 843(b) (Counts 34, 35, 37, 38, and 39).

In January 2001 Mr. King went to trial before this Court. On February 1, 2001, the jury found Mr. King guilty on all counts, reaching unanimous agreement that the quantity of cocaine base involved in the conspiracy was 1.5 kilograms or more.  At all stages up to and including trial, Mr. King was represented by counsel.

On August 2, 2001, the Court sentenced Mr. King to the following: concurrent sentences of life imprisonment on Counts 1, 10, and 11; 480 months imprisonment on Counts 6, 7, 8, and 9; 48 months imprisonment on Counts 34, 35, 37, 38, and 39; a $2,500 fine; 10 years supervised release; and a $1,200 special assessment.

On August 2, 2001, Mr. King appealed his judgment.  On April 7, 2004, the Third Circuit affirmed the judgment of conviction and the sentence.  On April 4, 2005, Mr. King filed his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §

2255.  He argues that the Court imposed an invalid sentence and that his Sixth Amendment right to assistance of counsel was violated because he was ineffectively represented by counsel. (U.S. Const. amend. VI).

### STANDARD OF REVIEW

28 U.S.C. § 2255(a) provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"Section 2255 'is expressly limited to challenges to the validity of the petitioner's sentence.'" United States v. Eakman, 378 F.3d 294, 297 (3d Cir. 2004)(citations omitted). "Section 2255 permits relief for an error of law or fact only where the error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" Id. at 298 (citations omitted).  The Third Circuit requires a petitioner to allege: "(1) that the district court received 'misinformation of a constitutional magnitude' and (2) that the district judge relied at least in part on that misinformation." Id.

### DISCUSSION

Mr. King moves to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  First, he argues that this Court

imposed an invalid sentence.  Next, he argues that his Sixth
Amendment right to assistance of counsel was violated because he
was ineffectively represented by counsel.  (U.S. Const. amend.
VI).  Mr. King alleges that his counsel was ineffective for five
reasons: (1) for making an admission of guilt in his opening and
closing statements; (2) for failing to object to certain jury
instructions; (3) for failing to object to the Probation
Office's, and Court's, finding that he distributed crack, and
sentencing King accordingly; (4) for failing to argue for a
downward departure for King based on his minor role in the
offense; and (5) for failing to timely file a petition for
certiorari in the United States Supreme Court.  Finally, Mr. King
argues that there is a reasonable probability that counsel's
errors, viewed cumulatively, affected the outcome of the case.
We consider and address these arguments *seriatim*.

    A.   *Sentence Imposed by the Court*

    Mr. King argues that the sentence imposed by this Court is
invalid under United States v. Booker, 543 U.S. 220, 125 S. Ct.
738, 160 L. Ed. 2d 621 (2005).  Mr. King argues that the Court's
assumption that the sentencing guidelines were mandatory as
opposed to advisory was false and deprived him of the assistance
of counsel at sentencing.  Mr. King further argues that defense
counsel's argument was limited to the narrow range of factors

considered pre-<u>Booker</u>, and that Booker vastly expanded this range of factors.

In <u>Booker</u>, the Supreme Court adopted an advisory approach to sentencing, thus "mak[ing] the Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender's real conduct."  543 U.S. at 246, 125 S. Ct. at 757, 160 L. Ed. 2d at 651.  The Supreme Court held that its remedial interpretation of the Sentencing Act must be applied to all cases on direct review on January 12, 2005, the date the <u>Booker</u> decision was handed down.  <u>Booker</u>, 543 U.S. at 268, 125 S. Ct. at 769, 160 L. Ed. 2d at 665 (citing <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.")).

Mr. King's conviction and sentence was affirmed by the Third Circuit on April 7, 2004.  Mr. King did not subsequently timely file a petition for certiorari, and we address the claim he raises with respect to this issue below.  His conviction became final on July 6, 2004, and therefore <u>Booker</u> does not apply to his case and can offer him no relief.  We therefore DENY Mr. King's motion with respect to his invalid sentence claim.

B.    *Ineffective Assistance of Counsel*

The Supreme Court has established a two-prong test for determining ineffective assistance of counsel.  A defendant must show both (1) unreasonable advice and (2) that the outcome was prejudiced as a result of the unreasonable advice.  <u>Strickland v. Washington</u>, 466 U.S. 668, 682, 104 S. Ct. 2052, 2061, 80 L. Ed. 2d 674, 690 (1984).  "The unreasonable advice must not be 'within the range of competence demanded of attorneys in criminal cases.'"  <u>United States v. Cole</u>, 246 Fed. Appx. 112, 115 (3d Cir. 2007) (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203, 208 (1985)).  Upon review, there is a "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance."  <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2061, 80 L. Ed. 2d at 695).  "Prejudice consists of a 'reasonable probability' that the outcome would have been significantly different had counsel's performance been adequate."  <u>Id.</u>  (quoting <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <u>United States v. Johnson</u>, 2005 U.S. Dist. LEXIS 31237, at

*2 (E.D. Pa. Dec. 6, 2005) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694).

> 1.   *Opening and Closing Statements*

Mr. King argues that his counsel was ineffective in connection with the opening statement and closing argument because statements made by counsel at both points "were tantamount to a plea of guilty to several counts of the indictment." (Pet'r Post-Hr'g Mem. at 4).  Mr. King argues that counsel admitted that he was a drug dealer in the opening statement, and conceded that he was involved in two crack cocaine sales in the closing argument.

In Davenport v. Diguglielmo, 215 Fed. Appx. 175, 181 (3d Cir. 2007), the Third Circuit considered the motion of a petitioner claiming ineffective assistance of counsel based on a concession of guilt in the closing argument.  The Third Circuit held: "**Counsel's** failure to obtain express consent from his client to pursue a strategy that includes a **concession of guilt** is not deficient performance *per se*. . . . as long as **counsel** informed the defendant of the strategy before he proceeded and it satisfied the Strickland standard."  The Supreme Court has found that "conceding guilt during a closing or opening statement did not amount to the functional equivalent of a guilty plea" because the concession did not

result in a truncated trial and the defendant "retained all the rights accorded a defendant during a criminal trial." Davenport, 215 Fed. Appx. at 181 (quoting Florida v. Nixon, 543 U.S. 175, 186-89, 125 S. Ct. 551, 559-62 160 L. Ed. 2d 565, 577-80 (2004)).

In Mr. King's case, as in Mr. Davenport's, counsel pursued a reasonable trial strategy in light of the evidence available. At trial, Mr. King was represented by defense counsel Mr. Tariq El-Shabazz. Mr. El-Shabazz testified that Mr. King never specifically authorized him to say that Mr. King was a drug dealer, but that he had absolutely no doubt that he discussed the overall trial strategy with his client. (N.T. 12/15/05 at 31). Mr. El-Shabazz testified that there was clear evidence in the form of a videotape with an audiotape of a drug transaction between Mr. King and a cooperating witness. (N.T. 12/15/05 at 24). Mr. El-Shabazz's strategy was to gain credibility with the jury by admitting to Mr. King's role in the videotaped drug transaction, and to attempt to separate Mr. King from the rest of the drug conspiracy. (N.T. 12/15/05 at 24-25, 28). Mr. El-Shabazz offered similar testimony with respect to the contents of his closing argument, in which he conceded to the jury Mr. King's involvement with the videotaped drug transaction. (N.T. 12/15/05 at 30).

Consistent with the guidelines set forth in <u>Nixon</u>, Mr. King's counsel discussed the trial strategy with him, though he did not discuss the content of the opening and closing statements specifically.  Given that the charges counsel conceded to were clearly recorded on video and audiotape, and given that the "confession and avoidance" tactic is a commonly used and accepted trial strategy, we find that counsel's actions were neither unreasonable nor prejudicial to the outcome under <u>Strickland</u>. <u>See, e.g.</u>, <u>United States v. Freedman</u>, 390 F.3d 1153, 1158 (9th Cir. 2004) ("[W]e reaffirm the validity of the 'confession and avoidance' tactic used by counsel in this case to avoid diminishing his credibility by arguing a lost cause.").  We therefore DENY petitioner's motion with respect to his claim that his counsel was ineffective in connection with the opening and closing statements.

### 2.   Jury Instructions

Mr. King argues that his counsel was ineffective for failing to object to the following jury instruction, which he refers to as the "two-inference" jury instruction:

> So if you, the jury, after careful consideration of all the evidence in the case has a reasonable doubt that a defendant is guilty of any charge in the case, it must acquit the defendant of that charge.  **If the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence (inference one), the other of guilt (inference two), the jury should adopt the conclusion of innocence.**"

(N.T. 1/31/01 at 23-24)(emphasis and explanatory parentheticals added).  Mr. King also argues that the Court's characterization of Wiley Josey as a co-conspirator in the jury instructions was improper because Mr. Josey eventually became a cooperator.  We address each of these arguments *seriatim*.

### a.   Two-Inference Instruction

Mr. King argues that the two-inference jury instruction, quoted above, mislead the jury into thinking the government's burden was lower than the beyond a reasonable doubt standard, and did not adequately explain how the jurors should proceed if they found the inference of guilt to be stronger than the inference of innocence, but not strong enough to be beyond a reasonable doubt.

In United States v. Isaac, 134 F.3d 199, 202-04 (3d Cir. 1998) the Third Circuit considered a "two-inference" jury instruction nearly identical to the one at issue in the instant case.  In Isaac, the Third Circuit stated: "[a]lthough we disapproved of the 'two-inference' instruction in Jacobs, we did not hold that the instruction was so constitutionally deficient *per se* that it infected the entire instruction of reasonable doubt."  Id. at 202 (citing United States v. Jacobs, 44 F.3d 1219, 1226 (3d Cir. 1995)).  The Third Circuit concluded that the jury instruction at issue in Isaac, when taken as a whole, "adequately conveyed the government's burden of proof to the

11

jury." 134 F.3d at 204.  The <u>Isaac</u> court undertook the common
practice of using negative and positive examples of reasonable
doubt "to create a framework for the jury's understanding,"
repeatedly stated that the Government's burden of proof was
beyond a reasonable doubt, and never shifted the burden to the
defendant.  <u>Isaac</u>, 134 F.3d at 203-04.  In <u>Holland et Ux. v.</u>
<u>United States</u>, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150 (1854),
the Supreme Court recommended that the reasonable doubt section
of the jury charge be phrased "in terms of the kind of doubt that
would make a person hesitate to act."  348 U.S. at 140, 75 S. Ct.
at 138, 99 L. Ed. at 167).

Given the Third Circuit's analysis in <u>Isaac</u>, the two-
inference jury instruction given in Mr. King's case, taken as a
whole, is clearly satisfactory.  Like the instruction given in
<u>Isaac</u>, this Court complied with <u>Holland</u> when it defined
reasonable doubt as "[t]he kind of doubt that would make a
reasonable person hesitate to act."  (N.T. 1/31/03 at 23).  At
sentencing, this Court created a framework for the jury by
contrasting positive and negative examples of reasonable doubt,
emphasized that the Government's burden of proof was beyond a
reasonable doubt and never shifted the burden to the defendant.
<u>Isaac</u>, 134 F.3d at 204.  Though the Third Circuit has urged trial
courts to heed objections to the two-inference jury instruction,
it has by no means mandated that counsel object to such an

12

instruction.  Isaac, 134 F.3d at 203.  Counsel's failure to
object to the two-inference jury instruction in the instant case
was not unreasonable within the meaning of Strickland, and, given
the above analysis, cannot be found to have prejudiced the
outcome of the case.  We therefore DENY petitioner's motion with
respect to his claim that counsel was ineffective for failing to
object to the two-inference jury instruction.

### b.   Mr. Josey's Characterization

Mr. King argues that his counsel was ineffective for failing
to object to Wiley Josey's characterization as a co-conspirator
in the jury instruction because Mr. Josey became a cooperator
with the government at some point during the life of the
conspiracy and therefore was not a genuine co-conspirator.

In order to establish a conspiracy, there must be at least
two actors conspiring together, neither of whom is a government
agent or informer.  United States v. Ellege, 723 F.2d 864, 865
(11th Cir. 1984).  However, conversation which occurred between a
government agent or informer and an actor in the conspiracy may
be used as evidence of the conspiracy.  Id. at 865-66.  Because
Mr. King had 13 co-defendants and because his interaction with
Mr. Josey did not form the basis of the conspiracy, the jury was
properly instructed to consider Mr. Josey's testimony.  We do not
find that counsel was unreasonable in failing to object to the

13

reference to Mr. Josey's testimony in the jury instruction, nor do we find that the outcome of Mr. King's case was prejudiced as a result.  We therefore DENY petitioner's motion with respect to his claim that counsel was ineffective for failing to object to the inclusion of Mr. Josey's testimony in the jury instruction.

3.    *Failure to Object to the Court's Finding that Petitioner Distributed Crack*

Mr. King argues that his counsel was ineffective for failing to object to the Probation Office's and the Court's, finding that he distributed crack, and subsequently sentencing Mr. King accordingly.

United States Sentencing Guidelines § 2D1.1 provides: "'Cocaine base,' for the purposes of this guideline, means 'crack.'  'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." 18 U.S.C.S. Appx. § 2D1.1(D).  The Third Circuit has held that the Government must prove by a preponderance of the evidence that the form of cocaine base the defendant sold was crack in order for § 2D1.1 of the Sentencing Guidelines to apply and thus for a sentencing enhancement to be appropriate.  United States v. James, 78 F.3d 851, 858 (3d Cir. 1996).  As will be discussed below, the Third Circuit has been lenient in its evaluation of whether the Government has met its burden of proof.

14

In the consolidated appeal <u>United States v. Roman</u>, 121 F.3d 136, 140 (3d Cir. 1997), the Third Circuit reviewed the sentences of two petitioners, both contending that "the district court erred in finding that the controlled substance involved in their case was crack cocaine and sentencing them pursuant to the guideline enhancement for the drug." The Third Circuit ultimately concluded that the government did meet its burden of proof (albeit just barely) when it presented the testimony of a single police officer identifying the controlled substance as crack cocaine. It further found that it was proper for the district court to rely upon that testimony at sentencing.

The Third Circuit has made clear that the government can satisfy its burden of proof through the testimony of police or witnesses, or of admissions of the defendant, and that a chemical analysis is not necessary to prove that the substance at issue is crack. <u>See, e.g.</u>, <u>Roman</u>, 121 F.3d at 140-41; <u>United States v. Roberson</u>, 194 F.3d 408, 417 (3d Cir. 1999). In contrast to <u>Roman</u>, the Government in the instant case presented the testimony of numerous witnesses to prove by a preponderance of the evidence that the controlled substance in question was crack. The Probation Office identified the substance as crack cocaine in its pre-sentencing report, and Mr. King was sentenced on the basis of that identification. Furthermore, witness Arnold Mack testified that he cooked cocaine into crack at the request of members of

the organization, including Mr. King.  Given that the government
clearly met its burden of proof, we do not find that counsel's
failure to object to the crack enhancement at sentencing was
unreasonable or prejudiced the outcome of the case under
Strickland.  We therefore DENY petitioner's motion with respect
to the claim that counsel was ineffective for failing to object
to the cocaine enhancement.

### 4.   *Minor Role Downward Departure*

Mr. King argues that his counsel was ineffective for failing
to make an argument for a reduction in his offense level given
his minor role in the conspiracy.

The U.S. Sentencing Guidelines Manual § 3B1.2 allows for a
reduction in a defendant's offense level if the defendant was
either a minimal or minor participant.  § 3B1.2 provides:

> Based on the defendant's role in the offense, decrease
> the offense level as follows:
> (a) If the defendant was a minimal participant in any
> criminal activity, decrease by 4 levels.
> (b) If the defendant was a minor participant in any
> criminal activity, decrease by 2 levels.
> In cases falling between (a) and (b), decrease by 3
> levels.

The application of this provision is fact-sensitive.  United
States v. Brown, 250 F.3d 811, 819 (3d Cir. 2001).  Reduction is
available for a defendant whose role in the offense makes him
substantially less culpable than the average participant, but
this fact alone does not entitle the defendant to "minor

16

participant" status as a matter of law.  Id. (citations omitted).
The Third Circuit has held that a defendant's eligibility for
"minor participant" status turns on "whether his 'involvement,
knowledge and culpability' were materially less than those of
other participants."  Id. (quoting United States v. Headley, 932
F.2d 1079, 1084 (3d Cir. 1991)).  This determination depends
upon: (1) the defendant's awareness of the nature and scope of
the criminal enterprise; (2) the nature of the defendant's
relationship to the other participants; and (3) the importance of
the defendant's actions to the success of the venture.  Id.  A
district court properly considers each of these factors in
relation to the other participants in the conspiracy.  Id.

    At trial, witnesses testified that Mr. King ran corners
where the drug conspiracy operated, "hiring and paying workers,
storing and supplying crack, collecting money, and deciding when
to re-open corners and how to package crack."  (Gov't Resp. at
21).  Communication records presented at trial show that other
defendants called Mr. King when they needed to be resupplied with
crack.  Mr. King has presented no evidence and made no argument
to substantiate the claim that he was less culpable than the
other defendants.  Witness testimony at trial, alongside the fact
that Mr. King was named the lead defendant in the case, persuades
us that an argument at sentencing for a downward departure for
minor role would have been baseless.  Moreover, the Government

correctly points out that the 2-level decrease for which King is arguing would have made no difference in the sentence he received: "King was a level 46, so a 2-level decrease would put him at level 44.  King's criminal history category was III. According to the guidelines, any level of 43 and above, with a criminal history category of III, calls for life imprisonment. Consequently, he suffered no prejudice from counsel's failure to raise the issue at sentencing."  (Gov't Resp. at 20).

Given the foregoing discussion, counsel's determination cannot be found unreasonable under Strickland, nor can it be found to have prejudiced the outcome of the case.  We therefore DENY petitioner's motion with respect to his claim that his counsel was ineffective for failing to argue for a downward departure for minor role.

5.  *Petition for Certiorari in United States Supreme Court*

Mr. King argues that counsel was ineffective for failing to timely file a petition for certiorari in the United States Supreme Court.  Mr. King further argues that counsel was ineffective for failing to timely furnish him with his case file so that he could file for certiorari himself.

The Supreme Court has held that a criminal defendant does not have a constitutional right to pursue discretionary state appeals or applications for review in the United States Supreme

Court.  <u>Wainwright v. Torna</u>, 455 U.S. 586, 587, 102 S. Ct. 1300, 1301, 71 L. Ed. 2d 475, 477 (1982).  In <u>Wainwright</u>, the Supreme Court concluded: "[s]ince respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."  455 U.S. at 587-88, 102 S. Ct. at 1301, 71 L. Ed. 2d at 477-78.

Mr. King alleges that he exhausted all reasonable courses of action in order to obtain his case file from counsel so that he could retain another attorney to file a petition for certiorari on his behalf. (N.T. 12/15/05 at 6-11).  In the period of time between April 7, 2004 and July 30, 2004, Mr. King was in communication with three separate attorneys regarding the filing of a petition for certiorari: Robert Madden, Peter Goldberger, and Cheryl Sturm.  Mr. King's appeal was denied on April 7, 2004, when the Third Circuit affirmed his conviction and sentence. Shortly after that date, he had two discussions with Mr. Madden, his appellate counsel, in which he requested that Mr. Madden file a petition for certiorari.  (N.T. 12/15/05 at 6-8).  Both times, Mr. Madden denied his request, reasoning that filing for certiorari would be futile.  <u>Id.</u>  Mr. King testified that Mr. Madden did not inform him of the time frame within which he was required to file for certiorari, but that someone at the prison "told me I had two weeks, 14 days."  (N.T. 12/15/05 at 8-9).

When Mr. Madden declined Mr. King's request to file a
certiorari petition, he requested that Mr. Madden provide him
with his case file so that he could retain another attorney.
(N.T. 12/15/05 at 8).  Mr. Madden asked Mr. King to send him a
letter requesting his paperwork, and Mr. King complied with this
request.  Id.  Two weeks after sending Mr. Madden the letter, on
approximately April 21, 2004, Mr. King sent a family member to
Mr. Madden's office to retrieve his case file.  (N.T. 12/15/05 at
8).  The family member was told that Mr. Madden was still working
on getting the file together, and it was not yet available.  Id.
On approximately the same date, Mr. King contacted another
attorney, Mr. Goldberger, and requested that Mr. Goldberger take
his case.  (N.T. 12/15/05 at 9).  Mr. King attempted to have his
case file transferred from Mr. Madden to Mr. Goldberger, but Mr.
Goldberger never received the file.  (N.T. 12/15/05 at 9).
Approximately two weeks after his initial contact with Mr.
Goldberger's office, on approximately May 5, 2004, Mr. King was
told that Mr. Goldberger could not take his case.  (N.T. 12/15/05
at 9-10).  On approximately the same date, Mr. King contacted Ms.
Sturm, who requested Mr. King's file from Mr. Madden on July 30,
2006.  (N.T. 12/15/05 at 10-11, 20).  On August 26, 2004, Mr.
Madden sent Mr. King's case file to Ms. Sturm via Fed-Ex.  (Pet'r
Post-Hr'g Mem. at 17-18).

Mr. Madden testified that he thought Mr. King's brother had collected Mr. King's case file from his office, and that, based on communication with Mr. King's family, he believed someone else was going to be filing the petition for certiorari.  (N.T. 12/15/05 at 19, 17).  To lend credence to his belief, Mr. Madden referenced a letter from Mr. King's family members dated April 22, 2002 (two years *prior* to April 2004), in which the family members indicated that they had retained the National Legal Professional Associates for assistance in preparation of some of the issues on appeal.  (N.T. 12/15/05 at 17-18).

Mr. Madden testified that he cited Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), in his appellate brief.  (N.T. 12/15/05).  He testified that he believed the filing of Mr. King's appeal occurred pre-Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and that he did not know whether he cited Blakely in his appellate brief.  He further testified that he did not believe that the Supreme Court had granted certiorari on Booker at the time of Mr. King's appeal.  Blakely was argued before the Supreme Court on March 23, 2004, and was decided on June 24, 2004.  The Supreme Court granted certiorari in Booker on August 2, 2004.  Booker was argued before the Supreme Court on October 4, 2004, and was decided on January 12, 2005.

Mr. King argues that, had the petition for certiorari been filed, "there was a reasonable likelihood the petition would have been granted and the case remanded to the district court for resentencing pursuant to [Booker, 543 U.S. at 268, 125 S. Ct. at 769, 160 L. Ed. 2d at 665]." (Pet'r Post-Hr'g Mem. at 19). He bases this argument on the fact that other defendants in his case filed petitions for certiorari and received a remand to the Third Circuit for further consideration in light of Booker. See, e.g., Jacobs v. United States, 543 U.S. 1102, 1116, 125 S. Ct. 1009, 160 L. Ed. 2d 1009 (2005).

When counsel advised Mr. King of the futility of filing a petition for certiorari, Mr. King had been found guilty on all counts by a jury, and this finding as well as his sentence had been affirmed by the Third Circuit. Moreover, both counsel and Mr. King had access to the public knowledge that the Supreme Court receives approximately 7,500 petitions for certiorari each year, of which only approximately 150 are granted. Taking into account these circumstances in order to appreciate counsel's perspective at the time, we do not find unreasonable counsel's determination that filing a petition for certiorari would have been futile, nor do we find that the outcome of Mr. King's case was prejudiced by counsel's advice. We further find that to conclude that counsel's advice prejudiced Mr. King would unfairly introduce the "distorting effects of hindsight." Strickland, 466

U.S. at 689.  The Supreme Court did not grant certiorari in
Booker until April 2, 2004, approximately four months after Mr.
King's appeal was denied on April 7, 2004, and approximately one
month after his conviction and sentence became final on July 6,
2004.  We do not find it reasonable to expect counsel to have
foreseen that a substantive change would be made to the Federal
Sentencing Guidelines.  We reiterate that the Supreme Court has
held that a criminal defendant does not have a constitutional
right to pursue applications for review in the Supreme Court.
Since Mr. King did not have a constitutional right to file a
petition for certiorari, his argument that counsel was
ineffective for failing to timely file a petition for certiorari
in the United States Supreme Court fails.  Wainright, 455 U.S. at
587-88.  We therefore DENY petitioner's motion with respect to
this claim.


        C.  *Cumulative Effect*

     Mr. King argues that there is a reasonable probability that
counsel's errors, viewed cumulatively, affected the outcome of
the case.  Because we find that counsel committed no errors and
therefore was not ineffective, we need not further address this
issue.  We DENY Mr. King's motion with respect to the claim that
counsel's errors, viewed cumulatively, affected the outcome of
the case.

## CONCLUSION

Based on the totality of the record before the Court, we do not find that <u>Booker</u> applies to petitioner's case, we therefore DENY petitioner's motion with respect to his invalid sentence claim.  543 U.S. at 268, 125 S. Ct. at 769, 160 L. Ed. 2d at 665. We further do not find that counsel was ineffective under <u>Strickland</u> on any of the claims enumerated, we likewise DENY petitioner's motion with respect to his ineffective assistance of counsel claims.  466 U.S. at 682, 104 S. Ct. at 2061, 80 L. Ed. 2d at 690.  Further, we find that because counsel was not ineffective, we must DENY petitioner's motion with respect to the claim that counsel's errors, viewed cumulatively, affected the outcome of the case.  Accordingly, the Petition is denied. Moreover, as Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court further concludes that there is no basis for the issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
UNITED STATES OF AMERICA,      :     CRIMINAL NO. 00-313-01
                               :
              Plaintiff,       :
                               :     CIVIL NO. 05-CV-1516
         vs.                   :
                               :
JERMAINE KING,                 :
                               :
              Defendant.       :
```

**ORDER**

AND NOW, this 23rd  day of September, 2008, upon consideration of Defendant's Post-Hearing Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 506), his Supplemental Post-Hearing Memorandum (Doc. No. 605) and Second Supplemental Post-Hearing Memorandum (Doc. No. 607), Government's Response thereto (Doc. No. 492), Government's Final Response thereto (Doc. No. 515), and Defendant's Answer to the Government's Final Response (Doc. No. 521), it is hereby ordered that the Motion is DENIED.

A certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) is DENIED.  The Clerk shall Close this case statistically.

BY THE COURT:


_____
J. CURTIS JOYNER, J.